**In re Ronald Kent KUNZ, also known as R. Kent Kunz, also known as Ronald Kunz, also known as Kent Kunz, also known as K. Kunz, also known as R. Kunz, Debtor.**

**Stephen W. Rupp, Trustee, Plaintiff–Appellee,**

v.

**United Security Bank, Defendant–Appellant.**

BAP No. UT–05–021.
Bankruptcy No. 02C–40422.
Adversary No. 03PC–2460.

United States Bankruptcy Appellate Panel of the Tenth Circuit.

Dec. 14, 2005.

Jeremy C. Sink, Stephen W. Rupp with him on the brief, McKay, Burton & Thurman, Salt Lake City, UT, for Plaintiff–Appellee.

Don J. Pool, Powell & Pool, Fresno, CA, Stephen B. Watkins and Paul M. Halliday, Halliday & Watkins, P.C., Salt Lake City, UT, on brief, for Defendant–Appellant.

Before CORNISH, BROWN, and McNIFF, Bankruptcy Judges.

OPINION

CORNISH, Bankruptcy Judge.

United Security Bank ("Bank") appeals the bankruptcy court's order denying its

motion for partial summary judgment and granting the motion for partial summary judgment filed by Stephen W. Rupp, Trustee ("Trustee"), concluding as a matter of law that the Bank was an insider of the Debtor for purposes of 11 U.S.C. § 547(b)(4).[1] We affirm in part and reverse in part.

## I. Background

The relevant facts are undisputed. The Debtor was formerly a member of the Bank's board of directors. He resigned from the board of directors in May 1990, and since that time he has held the title "director emeritus." He has not attended a meeting of the Bank's board of directors since his resignation. As a director emeritus, the Debtor has no decision making power, no office, and no staff; he is not entitled to attend any meeting on Bank business, does not make decisions on the extension or renewal of credit, and does not have signatory authority on behalf of the Bank. Directors emeritus receive a fixed monthly honorarium of $400.00 and are listed in the Bank's annual reports. In 2001, the Bank had six directors emeritus.

In October and November 2001, the Debtor, through counsel, attempted to negotiate a compromise of significant debt he owed to three banks—Wells Fargo, Comerica, and the Bank. On November 9, 2001, the Debtor owed unsecured debt of $600,000.00 to Wells Fargo and unsecured debt of $155,000.00 to Comerica. The Trustee alleges that the amount owed to the Bank was $611,537.69, of which approximately $494,000.00 was unsecured, but the Bank disputes the Trustee's calculations.

Wells Fargo did not agree to the Debtor's offer of compromise, and the Debtor

1. Unless otherwise indicated, future statutory references are to Title 11 of the United States Code.

ultimately sought bankruptcy protection. Between November 2001 and the filing of the Debtor's petition on November 27, 2002, the Debtor made payments to Wells Fargo totaling $26,159.61 and payments to Comerica totaling $60,507.29. He also made a number of transfers ("Transfers") to the Bank. In December 2001, the Debtor made payments of $114,606.06, and he transferred a parcel of property and shares of stock, the value of which is yet to be determined by the bankruptcy court. In July 2002, the Debtor made a transfer of $132,245.49.

The Debtor filed his Chapter 7 petition more than 90 days after, but within one year after the Transfers were made. Wells Fargo filed a proof of claim in the Debtor's bankruptcy for an unsecured debt of $637,712.19. Comerica filed a proof of claim for an unsecured debt of $106,733.33. The Bank did not file a proof of claim. Based on information from the Debtor's schedules, the Trustee alleges that on the petition date, the Bank was owed $367,437.42, of which only $17,437.42 was unsecured.

The Trustee filed a complaint against the Bank, seeking to recover the Transfers as a preference under § 547(b)(4)(B), alleging that the Bank was an insider. The Bank and the Trustee each filed motions for partial summary judgment. The bankruptcy court denied the Bank's motion and granted the Trustee's motion, concluding:

4. The Bank is an insider of the Debtor pursuant to the plain meaning of Section 101(31) of the United States Bankruptcy Code.

5. Section 101(31) includes, as insiders of a debtor, corporations for which the debtor is a director.

6. The Bank held the Debtor out to the public, to investors, and to customers as a director emeritus.

7. The term "emeritus" is an adjective. An adjective is a word belonging to one of the major form classes in any of numerous languages, and typically serves as a modifier of a noun to denote a quality of the thing named, to indicate its quality or extent, or to specify a thing as distinct from something else. Webster's New Collegiate Dictionary (1979).

8. The word "director" is a noun used in Section 101(31)(A)(iv) of the Code to define when a corporation is an insider.

9. The word "emeritus" [is] an adjective that does nothing more than modify the noun "director." This leaves the Debtor as a director in the same sense that a "second class director" or a "voting director" is a director of a corporation.[2]

This appeal ensued.

## II. Jurisdiction and Standard of Review

This Court has jurisdiction over this appeal. The Bank timely filed a notice of appeal and motion for leave to appeal, and this Court granted leave to appeal by Order entered March 18, 2005.[3] No party has filed an election to have the appeal heard by the United States District Court for the District of Utah.[4]

---

2. Conclusions of Law ¶¶ 4–9, *in* Appellant's Appendix at 537–38. The Appellant's Appendix, as originally filed, was missing pages of the transcript of the bankruptcy court hearing. Upon learning of the error, the Appellant filed the complete copy of the transcript.

We grant the Appellant's construed motion to replace the transcript in the Appendix.

3. *See* 28 U.S.C. § 158(a)(3); Fed. R. Bankr.P. 8003.

4. *See* 28 U.S.C. § 158(b)-(c); Fed. R. Bankr.P. 8001(e); 10th Cir. BAP L.R. 8001–1.

The bankruptcy court's order denying the Bank's motion for partial summary judgment and granting the Trustee's motion for partial summary judgment is reviewed de novo. As we have previously stated:

"[B]ecause summary judgment may only be granted where there is no genuine issue of material fact, any purported 'factual findings' of the bankruptcy court cannot be 'factual findings' as to disputed issues of fact, but rather are conclusions as a matter of law that no genuine issue of material fact exists; such conclusions of law are, of course, subject to plenary review." [5]

### III. Discussion

The Trustee's complaint sought to recover the Transfers to the Bank under § 547(b), which provides:

the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.[6]

The parties do not dispute that the Bank received the Transfers, which were to its benefit, on account of antecedent debt, and enabled the Bank to receive more than it would have received otherwise from the Debtor's Chapter 7 case. Issues regarding the Debtor's solvency and the amount of the Transfers remain for trial. The only issue in this appeal is whether the Bank is an insider. If the Bank is an insider, the Transfers may be avoidable, as they were made within one year before the filing of the Debtor's bankruptcy petition. If the Bank is not an insider, the Transfers would not be avoidable, as they were made more than 90 days before the filing of the Debtor's bankruptcy petition.

■ Section 101(31) provides that "the term 'insider' includes—(A) if the debtor is an individual—... (iv) corporation of which the debtor is a director, officer, or person in control[.]" [7] The bankruptcy court held as a matter of law that the adjective "emeritus" could be disregarded, and as a "director emeritus," the Debtor was a "director" for purposes of § 101(31) and § 547(b)(4). We respectfully disagree.

The definition of the term "adjective" adopted by the bankruptcy court provides that an adjective " 'typically serves as a modifier of a noun to denote a quality of the thing named, to indicate its quality or extent, or to specify a thing as distinct

**5.** *Holaday v. Seay (In re Seay)*, 215 B.R. 780, 785 (10th Cir. BAP 1997) (quoting *Rosen v. Bezner*, 996 F.2d 1527, 1530 n. 2 (3d Cir. 1993)); *see Kojima v. Grandote Int'l Ltd. Liability Co. (In re Grandote Country Club Co., Ltd.)*, 252 F.3d 1146, 1149 (10th Cir.2001)

(ruling on summary judgment is reviewed de novo).

**6.** 11 U.S.C. § 547(b).

**7.** 11 U.S.C. § 101(31)(A)(iv).

from something else.' "[8] In this case, the adjective "emeritus" serves as a modifier of the noun "director," to denote a quality of the Debtor's position. The adjective "emeritus" specifies that the Debtor's position is distinct from that of a current member of the board of directors.

Adjectives can provide important legal distinctions.[9] Courts have recognized that the adjectives "former" and "future" can distinguish one who is an insider from one who is not. In *In re Schuman*,[10] the Ninth Circuit Bankruptcy Appellate Panel held that a former spouse was not an insider, even though a current spouse would be one. Similarly, in *Thrush v. Marvin (In re Hollar)*,[11] the bankruptcy court held that a future spouse was not an insider.

In *Foxgord v. Hischemoeller*,[12] the Ninth Circuit Court of Appeals recognized a distinction between "honorary consul" and "consul." The applicable statute provided exclusive federal jurisdiction over suits against "consuls or vice consuls."[13] Mr. Hischemoeller, an honorary consul, was sued in federal court. He sought dismissal, arguing that his position was not included in the language of the statute. On appeal, the Circuit noted that the statute did not define the term "consul." The

court therefore looked to Webster's Dictionary, Black's Law Dictionary, and the definition commonly used in the international community.[14] The court also reviewed the statute's legislative history, ultimately concluding that an honorary consul was not included within the statute.[15]

As in *Foxgord*, we note that the applicable statute does not define the term "director," and we turn to the dictionary for the word's ordinary, common meaning. Webster's Dictionary defines "director" as: "one that directs: as a: the head of an organized group or administrative unit (as a bureau or school) b: one of a group of persons entrusted with the overall direction of a corporate enterprise . . . ."[16] Black's Law Dictionary defines "director" as: "1. One who manages, guides, or orders; a chief administrator. 2. A person appointed or elected to sit on a board that manages the affairs of a corporation or company by electing and exercising control over its officers."[17] The ordinary, common meaning of "director" includes an element of control of the corporation.

The statute's legislative history also includes an element of control. The Senate and House Reports state:

8.  Conclusions of Law ¶ 7 (quoting Webster's New Collegiate Dictionary (1979)), *in* Appellant's Appendix at 537.

9.  *See, e.g., Bastien v. Office of Senator Ben Nighthorse Campbell*, 390 F.3d 1301, 1305–06 (10th Cir.2004) (only acts that can be described by the adjective "legislative" are protected by the Speech or Debate Clause of the United States Constitution).

10. 81 B.R. 583, 585 (9th Cir. BAP 1987) (quoting 2 *Collier on Bankruptcy* ¶ 101.39 (Lawrence P. King ed., 15th ed.1986)).

11. 100 B.R. 892, 893 (Bankr.N.D.Ohio 1989).

12. 820 F.2d 1030, 1032–1033 (9th Cir.1987).

13. 28 U.S.C. § 1351(1).

14. *Foxgord*, 820 F.2d at 1032 ("It is a maxim of statutory construction that unless otherwise defined, words should be given their ordinary, common meaning. Since Title 28 does not define 'consuls or vice consuls,' we must look to the dictionary for the ordinary, common meaning of the word 'consul.' ") (citing *Perrin v. United States*, 444 U.S. 37, 42, 100 S.Ct. 311, 62 L.Ed.2d 199 (1979)).

15. *Id.* at 1034–35.

16. *Webster's Ninth New Collegiate Dictionary* 358 (1991).

17. *Black's Law Dictionary* 472–73 (7th ed.1999).

"Insider," defined in paragraph (25) [now 31], is a new term. An insider is one who has a sufficiently close relationship with the debtor that his conduct is made subject to closer scrutiny than those dealing at arms length with the debtor. If the debtor is an individual, than a relative of the debtor, a partnership in which the debtor is a general partner, a general partner of the debtor, *and a corporation controlled by the debtor* are all insiders.[18]

In this case, it is not clear that the Debtor, in his position as director emeritus, had the degree of control that a director would have.[19]

Whether the Debtor exercised control over the Bank to the extent that the Bank should be considered an insider is ordinarily a question of fact.[20] Here, where the facts are undisputed, it is a mixed question of law and fact.[21] A mixed question of law and fact can be resolved on summary judgment only when "reasonable minds cannot differ."[22] In this case, reasonable minds can differ.

Some facts in the record support the conclusion that the Bank is an insider. The Debtor was formerly a member of the Bank's board of directors, he holds the title "director emeritus" and is listed as such in the Bank's annual reports, and he is paid $400.00 per month as a director emeritus. Also, the Debtor and his counsel dealt directly with the Bank's president, rather than with a loan officer.[23]

---

**18.** S.Rep. No. 95–989, at 25 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5810–11; H.R.Rep. No. 95–595, at 312 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6269 (emphasis added).

**19.** Other courts have recognized that title alone, without evidence of control, is insufficient to confer insider status. *See In re Public Access Technology. Com, Inc.*, 307 B.R. 500, 505–506 (E.D.Va.2004) (officer); *NMI Sys., Inc. v. Pillard (In re NMI Sys., Inc.)*, 179 B.R. 357, 368 (Bankr.D.D.C.1995) (officer); *Guardian Equip. Corp. v. Conkie (In re Guardian Equip. Corp.)*, 20 B.R. 824, 825 (Bankr. S.D.Fla.1982) (director); *Lischka v. Vienna Int'l Corp. (In re Vienna Int'l Corp.)*, 17 B.R. 147, 151 (Bankr.D.Hawaii 1982) (officer); *Hunter v. Babcock (In re Babcock Dairy Co. of Ohio, Inc)*, 70 B.R. 685, 690 (Bankr.N.D.Ohio 1986) (officer).

**20.** *Wilson v. Huffman (In re Missionary Baptist Found.)*, 712 F.2d 206, 210 (5th Cir.1983) (insider determination is a finding of fact, made on a case-by-case basis; § 510(c)(1) context); *In re Krehl*, 86 F.3d 737 (7th Cir. 1996) (§ 727(a)(7) context); *In re Friedman*, 126 B.R. 63, 67 (9th Cir. BAP 1991) (§ 547 context).

**21.** As the Ninth Circuit Bankruptcy Appellate Panel stated in *Schuman*:

The Panel agrees that the insider determination might be considered a "question of fact" in the sense that it is made on a case-by-case basis, after the consideration of various factors. Nevertheless, where the underlying facts are undisputed, a trial court is free, on a motion for summary judgment, to determine whether the established facts satisfy the statutory standard. In this sense, it would be more accurate to consider the insider determination as a mixed question of law and fact.

81 B.R. at 586 n. 1, *quoted in In re Enter. Acquisition Partners, Inc.*, 319 B.R. 626, 630 (9th Cir.BAP2004); *Krehl*, 86 F.3d at 742.

**22.** *Resolution Trust Corp. v. Fed. Sav. & Loan Ins. Corp.*, 25 F.3d 1493, 1502 (10th Cir. 1994); *see also Mason v. Avaya Commc'ns, Inc.*, 357 F.3d 1114, 1122 (10th Cir.2004) (summary judgment on a mixed question of law and fact is appropriate when no reasonable factfinder could find in favor of the non-moving party).

**23.** But, it is undisputed that it was not uncommon for the Bank's president to be personally involved in the negotiation of repayment of overdue obligations in excess of several hundred thousand dollars. *Cf. In re Friedman*, 126 B.R. at 70 ("The case law that has developed also indicates that not every creditor-debtor relationship attended by a degree of personal interaction between the parties rises to the level of an insider relationship." (citing *Huizar v. Bank of Rob-*

But, some additional facts lend credence to the conclusion that the Debtor is merely a "show dog" along with other directors emeritus listed in the Bank's annual reports. The Debtor had not attended a board of directors meeting since 1990. As a director emeritus, the Debtor had no voting rights or decision-making power. Determining whether the Bank is an insider requires weighing the facts, which is not permissible on summary judgment.[24] The bankruptcy court did not err in denying the Bank's motion for summary judgment. However, the bankruptcy court's order granting the Trustee's motion for summary judgment was not appropriate.

## IV. Conclusion

The bankruptcy court's denial of the Bank's motion for partial summary judgment is affirmed. The bankruptcy court's grant of partial summary judgment in favor of the Trustee is reversed.

stown (In re Huizar), 71 B.R. 826 (Bankr. W.D.Tex.1987); Toledo Trust Co. v. Peoples Banking Co. (In re Hartley), 52 B.R. 679 (Bankr.N.D.Ohio 1985); In re Technology For Energy Corp., 56 B.R. 307 (Bankr. E.D.Tenn.1985))).

**24.** See Cone v. Longmont United Hosp. Ass'n, 14 F.3d 526, 533 (10th Cir.1994) ("On a motion for summary judgment we cannot evaluate credibility nor can we weigh evidence.").